ST. LOUIS & SAN FRANCISCO RY. CO. v. JAMES P. VESTAL.

Decided March 25, 1905.

**1.—Personal Injury to Servant—Negligence.**

Where plaintiff, a machinist's helper, while working with the machinist in adjusting certain machinery, placed his fingers where they might be injured and in doing so acted in accordance with the custom of doing the work, and as an ordinarily prudent person would have acted under like circumstances, and the machinist, by moving a rod, caused it to fall, injuring plaintiff's hand, and in so moving the rod was guilty of negligence, which was the proximate cause of the injury, plaintiff was entitled to recover, unless the jury found that he was guilty of contributory negligence in placing his fingers as he did.

**2.—Same—Negligence of Foreman—Contributory Negligence—Proximate Cause.**

If the machinist saw and knew of the dangerous position of plaintiff's fingers and knew the danger which would result to him by moving the rod, and yet moved it, thus causing the injury, and the moving of the rod was the proximate cause of the injury, and such an act as a man of ordinary prudence would not have done under the circumstances, plaintiff was entitled to recover, and the court's charge was correct in not extending the defense of contributory negligence to this phase of the case, involving a principle analogous to the doctrine of discovered peril.

**3.—Same—Assumed Risk—Negligence of Master.**

A servant does not assume any risk of injury resulting through the negligence of the master.

**4.—Same—Selecting Dangerous Method of Work.**

The servant does not assume the risk and become guilty of contributory negligence by selecting a dangerous way to perform the work when there is a safe way, unless he knows the way selected to be dangerous, or the danger

is apparent or obvious; and the danger is not obvious or known where it results from the foreman doing, in connection with the servant's work, a negligent act which a person of ordinary prudence would not have then done.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

*L. F. Parker* and *Head, Dillard & Head,* for appellant.—1. Where there are two practicable ways of doing the master's work, one of which is more likely to result in injury to the servant than the other, if the servant selects the more dangerous way he is guilty of such contributory negligence as will prevent him from holding the master liable for an injury caused thereby. 1 Labatt, Master & Servant, sec. 333, and numerous authorities cited in the note, among which we invite especial attention to Central Ry. Co. v. Mosely, 112 Ga., 914, 38 S. E. Rep., 350; English v. Chicago, &c., Ry. Co., 24 Fed. Rep. 908; Walker v. Atlanta, &c., Ry. Co., 103 Ga., 820; Morris v. Duluth, 108 Fed. Rep., 747; Beach on Contributory Negligence, sec. 299 n; 1 Bailey, Per. Injuries, 1151.

*Wolfe, Hare & Maxey,* for appellee.—1. If the court should conclude that plaintiff was guilty of contributory negligence as claimed by the defendant, yet plaintiff would be entitled to recover under the principle of "discovered peril." The uncontroverted evidence shows that defendant's vice-principal, L. H. Winborn, knew of Vestal's peril in time to have avoided injurying him; and such knowledge imposes upon such vice-principal the duty of avoiding inflicting such injury, and a failure so to do would render defendant liable, notwithstanding plaintiff may have been guilty of negligence in exposing himself to such danger. Texas Cen. Ry. v. Frazier, 34 S. W. Rep., 664; Edrington v. Kiger, 4 Texas, 93; Galveston, H. & S. A. Ry. v. Garrett, 73 Texas, 266; Yoakum v. Kelly, 30 S. W. Rep., 836; Texas & P. Ry. Co. v. Breadow, 90 Texas, 30; International & G. N. Ry. v. Dalwigh, 48 S. W. Rep., 528; Houston & T. C. Ry. v. Wallace, 53 S. W. Rep., 78.

2. Under no circumstances does the servant assume any risk of being injured by negligence of the master, and the uncontroverted testimony showing that, but for the negligence of the foreman Winborn, plaintiff would not have been injured, the court did not err in refusing the requested instruction on assumed risk. The main charge covered the issue of assumed risk. Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 288; Railway Company v. Gillephant, 70 Texas, 630; International & G. N. Ry. v. Emery, 40 S. W. Rep., 150.

TALBOT, Associate Justice.—The appellee, Vestal, brought this suit to recover of appellant damages alleged to have been sustained by him on account of personal injuries received through the negligence of appellant's servants.

Defendant pleaded the general issue, contributory negligence and assumed risk. A jury trial resulted in a verdict and judgment for appellee, and appellant prosecutes this appeal.

The evidence, while conflicting in some respects, is sufficient to jus-
tify the following conclusions of fact. On August 25, 1903, appellee was
in the employ of appellant in its roundhouse and shops in the city of
Sherman, in the capacity of machinist-helper. L. H. Winborn was ap-
pellant's machinist under whom, and subject to whose orders, appellee
was at work. On that date appellee was assisting Winborn to adjust and
fasten the main or driving rod on one of appellant's locomotives. There
was a hole or opening in the driving rod, and also holes in the cross-head,
called keyholes, to which the rod had to be connected and fastened by
means of a bolt or pin. In doing this work it was necessary to so ad-
just the main rod to said cross-head that the openings in each of them,
through which the bolt or pin had to pass, would come in exact apposi-
tion or flush with each other; E. D. Parker, another employe of appel-
lant, was assisting in adjusting the rod; he, Parker, was holding the rod
up with a bar resting upon the spokes of the driving wheel, and appellee's
duty was to ascertain when the openings were flush and put the pin
through. While this work was being performed Winborn, the machinist,
said to appellee, "Look in the hole and see if it is clear, so as to get the
wrist-pin in the hole of the cross-head." Appellee did as directed, and
told the machinist, Winborn, that the hole was not clear, and said to the
machinist, "Move it ahead a little bit." The machinist then said to ap-
pellee, "Jimmie, put your fingers in and see if it's not far enough;" and
appellee put his fingers in the hole, and just as he did so Winborn, the
machinist, moved the main rod, and the bar with which Parker was hold-
ing it up slipped from the spoke of the driving wheel and the main rod
fell, mashing three of appellee's fingers, which required the amputation
of two of them. These injuries were the result of the negligence of ap-
pellant's servants, and appellee sustained damages thereby in the amount
found by the jury. Other facts will be found in the opinion.

There were two theories upon which the jury was authorized by the
court's charge to return a verdict in favor of appellee, viz.: First, if the
appellee placed his fingers in the hole to ascertain whether or not the
keyhole of the cross-head and main rod of the engine were flush, and in
so doing acted in accordance with the custom and usage of doing the
work, and as an ordinarily prudent person would have acted under like
circumstances, and that appellant's machinist, Winborn, moved the main
rod and caused it to fall, and in so doing was guilty of negligence, which
was the proximate cause of appellee's injuries; second, if they believed
from the evidence that Winborn, the machinist, saw and knew that ap-
pellee had inserted his fingers in the keyhole at the time he was injured,
and knew that it was dangerous for him to do so, and knew the danger,
if any, which would result to appellee by moving said main rod at that
time, and with such knowledge he moved said rod and thereby caused
it to fall and injure appellee's fingers, and further believed that a man
of ordinary prudence, under the same or similar circumstances, would not
have moved said rod, and that the moving of said rod was the proximate
cause of appellee's injuries.

In behalf of the defendant, among other things, the jury was instructed
that, if they believed from the evidence that appellee, in inserting his
fingers in the keyhole, was guilty of contributory negligence, to find for·
defendant, unless they found for appellee upon the second theory above set

out; and that, if they believed from the evidence that appellee's injuries were caused by one of the risks ordinarily incident to the work in which he was engaged, then find for appellant.

The main charge of the court, submitting the theories and issues in the case, to which reference has been made above, was as full and favorable to appellant as it was entitled to ask, and we find no material error in the action of the court in refusing the several special charges requested. The court was not authorized under the facts to determine, as a matter of law, either that appellee was guilty of such contributory negligence, in placing his fingers in the keyhole at the time and under the circumstances he did, as precluded a recovery on his part, or that appellee's injuries were caused by one of those risks ordinarily incident to his employment. At the time appellee placed his fingers in the keyhole the main rod was apparently resting securely upon the bar handled by Parker, and so long as held up there was neither real nor apparent danger in acting as appellee did. If he was directed at such time by Winborn, subject to whose orders he was working—and there is evidence that he was—to place his fingers in the keyhole to ascertain whether or not the holes in the main rod and in the cross-head were flush, or if it was usual or customary to do so under such circumstances to ascertain such fact, then we think the most that appellant could ask in view of other testimony to the effect that Winborn moved the main rod and caused it to fall, was to have appellee's conduct, as an act of negligence proximately contributing to his injuries, submitted to the jury for their determination. This was done by the court, correctly limiting in his charge the defeat of appellee's right of recovery, on the ground of contributory negligence, to the theory first above referred to in this opinion, and as shown by the facts grouped in the fifth paragraph of his charge.

The servant does not assume any risk of injury resulting through the negligence of the master, and there is sufficient evidence in the record to warrant the conclusion that the machinist, Winborn, was guilty of negligence in moving the main rod while appellee's fingers were in the keyhole, and that, but for such negligence, appellee would not have been injured. If, indeed, it can be said under the facts and circumstances as disclosed by the evidence, that the issue of assumed risk was raised, the same was an issue of fact for the determination of the jury, and the appellant's requested charge to the effect that the evidence showed that appellee's injuries resulted from one of the risks assumed by him, and they would therefore return a verdict in favor of defendant, was unauthorized, and the court properly declined to give it.

Appellant's fifth assignment of error is predicated upon the refusal of the court to give the following special charge: "When there are two practicable ways for an employe to perform his duties, one of which is more likely to result in injury to himself than the other, it is his duty to adopt the safer course, and if he unnecessarily adopts the more dangerous manner, and his injury results therefrom, and would not have resulted had he adopted the safer course, he can not recover from his employer for such injuries. Therefore you are instructed that, if you believe from the evidence that there was a safer practicable way for plaintiff to ascertain whether or not the shaft was in proper position than by placing his fingers where he did, and that instead of adopting

such way he attempted to ascertain the position of the shaft by feeling in the hole with his fingers, and that his injuries were thereby caused, and would not have been caused had he adopted such other and safer way, you will find in favor of the defendant."

The contention is that the facts warranted the giving of this charge, and that if, as stated therein, appellee selected the more dangerous way, he was guilty of such contributory negligence as prevented him from holding appellant liable for any injury caused thereby. We do not understand the rule to be that a servant in the performance of a duty is chargeable with contributory negligence simply because he selects the more dangerous way and is injured, when two ways are open to him, and, had he selected the other way, the injury would have been avoided. The rule, as we understand it, is laid down by the Supreme Court of Alabama, in the case of Tennessee Coal, Iron & R. Co. v. Herndon, found reported in 14 S. E. Rep., 287, and is as follows: "If a party selects a dangerous way to perform a duty where there is a safe way, knowing the way selected to be dangerous, or if the danger is apparent or obvious, then he assumes the risk and is guilty of contributory negligence." If it should be conceded, however, that the charge requested stated the principle correctly, we think there was no reversible error in the refusal of the court to give it. As has been seen, there is evidence to the effect that appellee was told by his foreman, Winborn, to put his fingers in the keyhole to ascertain if the main rod was in position to admit of the insertion of the pin, and at that time the rod was resting upon the bar held by Parker. Now, while appellee was charged with a knowledge of the law of gravitation, and therefore knew that if the support of the main rod was withdrawn it would fall and injure his fingers, then in the keyhole, yet he had the right to assume, especially in view of the directions given him by Winborn, that no act would be done by either Winborn or Parker calculated to result in his injury while he was attempting, in the manner directed, to perform the service in which he was engaged. When appellee placed his fingers in the keyhole the main rod was being securely held up, or, at least, apparently so, by the bar in the hands of Parker. While being so held up there was no danger in a person placing his fingers in the keyhole; it was dangerous only in the event those manipulating the main rod, by some negligent act or omission on their part, caused it to fall. Appellee had no knowledge, at the time he placed his fingers in the keyhole, that Winborn would be guilty of the negligent act which caused the rod to fall and injure him. Nor was it apparent or obvious to him, at that time, that such an act would be done. He was authorized to rely upon the assumption that Winborn would do his duty, and was not required to anticipate and look out for his negligence.

Again, the charge in question ignored the second theory and phase of the case upon which the jury was authorized to find for appellee. This phase of the case is presented in the sixth paragraph of the court's charge, and the facts grouped therein upon which a verdict in favor of appellee was authorized are stated in a former part of this opinion. The principle involved in this charge of the trial court is analogous to the doctrine of discovered peril, if not the precise principle itself. If, as stated in substance in the charge, "Winborn, who occupied the position of vice-principal of appellant, knew that appellee had inserted his fin-

gers in the keyhole, and knew the danger which might probably result to appellee by moving the main rod at that time, and with such knowledge he moved said rod, and thereby caused it to fall, and a man of ordinary prudence, under the same circumstances, would not have moved said rod, and the moving of said rod was the proximate cause of appellee's injuries, then appellee was entitled to recover, although appellee may have been guilty of negligence in placing his fingers in said keyhole." Bearing upon this question Winborn testified, among other things: "I had hold of the rod at the time it slipped, and was making an effort to move it ahead and it slipped. . . . In trying to adjust it, it fell. Just before I had tried to move the bar I said, 'Watch, Jimmie, when I get it far enough ahead.' When I said this he was looking in at the hole of the cross-head. He also put his fingers in the hole, and I said right then and there for him to take them out. I said, 'Look out, Jimmie,' or something to that effect; *I don't remember what I said,* but I remember cautioning him. He put his fingers in a time or two, and took them out a time or two. I knew the rod was liable to fall. I saw his fingers in the hole and kept on pulling on the rod. It is a fact that I saw his fingers in there, and that I kept on pulling on the rod, and I did not quit."

There is testimony that no warning was given appellee, as stated by Winborn, and, if there was, that appellee did not hear it. And, as before stated, there is testimony that Winborn told appellee to put his fingers in the keyhole to ascertain if it was flush. The testimony clearly shows that Winborn knew the danger to which appellee was exposed by moving the rod which they were attempting to adjust while his fingers were in the keyhole. He knew his fingers were in the hole, and that, by moving the rod, it was liable to fall. Notwithstanding this, he persistently and negligently continued to move it, resulting, as he knew it was likely to do, in falling and injuring appellee. Knowing appellee's peril from moving the rod at such time, he should have refrained from moving it and otherwise used such means at his command to avoid injury to appellee, and, having failed to do so, the appellant is responsible for such damages as will fairly compensate appellee for the injuries sustained.

What we have said practically disposes of appellant's sixth and seventh assignments of error. The charges asked, and made the basis of these assignments, ignored the second theory upon which the jury was authorized to find for appellee. If he was entitled to recover upon that theory it was immaterial whether or not he was doing the work in the usual and customary way. Appellee was not authorized to recover upon the phase of the case submitted in the fifth paragraph of the court's charge unless he was doing the work at which he was engaged in the usual and customary manner. We have considered appellant's eighth assignment of error, complaining of the rejection of certain testimony offered on the cross-examination of the witness Nix, and conclude no reversible error is pointed out therein.

Finding no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*